## BOATMEN'S SAVINGS BANK *v.* STATE SAVINGS ASSOCIATION.

IN ERROR TO THE ST. LOUIS COURT OF APPEALS OF THE STATE OF
MISSOURI.

Argued April 1, 1885.—Decided April 13, 1885.

A depositor having a balance in bank drew his checks upon the bank in favor
of a third party. At the time of the presentment of the checks the deposi-
tor had become insolvent, and there was held by the bank a draft indorsed
by him but which had not then matured. The bank refused to pay the
checks, and afterwards, the depositor having been adjudged a bankrupt
and the draft dishonored, credited the amount of the balance on the draft,
and proved in bankruptcy for the difference only. The State Court de-
cided that the checks constituted an equitable assignment of the amount
due by the bank. *Held*, that the case did not present a Federal question.

This suit was brought by the State Savings Association of
St. Louis against the Boatmen's Savings Bank to recover the
amount of two checks drawn on the bank by the firm of Cobb,
Dolhonde & Co., dated respectively September 5, 1874, and
October 23, 1874, and presented for payment November 5,
1874. When the checks were presented there was a balance
on deposit in the bank to the credit of the firm more than
enough to take them up, but the firm had failed between the
dates of the checks and the time of their presentation, and had
notified the bank to that effect. The bank on that account
refused payment. At the time of the presentation of the
checks, and also at the time of the failure of the firm, the bank
held a draft, not then due, drawn by one Bradley on and ac-
cepted by the firm for $3,174, dated October 3, 1874, and pay-
able in forty days from date. On the same day that the checks
were presented and refused, it was arranged between the bank
and the Savings Association that if the bank succeeded in col-
lecting this draft from the drawer it would pay the checks.
The draft was never collected and the checks still remain un-
paid.

Cobb, Dolhonde & Co. did not resume payment after their

failure, and on the 23d of March, 1875, they were duly adjudicated bankrupts on a petition filed January 8, 1875. The bank indorsed on the Bradley draft the amount standing to the credit of the firm at the time of the failure, and proved its claim in the bankruptcy proceeding for the balance remaining due after this indorsement was made. Upon this balance dividends were paid by the assignee in bankruptcy. The Savings Association also proved its claim in bankruptcy and received dividends thereon. The total amount of its claim was much more than the amount of the checks.

The ground on which the Savings Association sought to recover in the suit was, that the presentation of the checks to the bank for payment, while there was a balance of deposits to the credit of the firm exceeding the amount drawn for, charged the bank with a liability to pay the checks to the association as the holder thereof. The defences set up by the bank in its answer were, 1, that the failure of the firm, and notice thereof to the bank, was equivalent to instructions from the firm not to pay any checks that might thereafter be presented; 2, that the Savings Association was not the assignee or indorsee of the checks; 3, that, in consideration of the agreement of the bank to pay the checks if the Bradley draft was collected, the Savings Association bound itself not to hold the bank liable if the collection was not made; and 4, that, relying on this agreement by the association, the bank credited the full amount of the balance of deposits in favor of the firm upon the Bradley draft, and proved up its demand against the estate of the bankrupts on account of the draft for no more than remained due after this credit was given, and that dividends were paid by the assignee only on the amount proven. Upon the trial judgment was given in favor of the Savings Association for the full amount of the checks, and this judgment was affirmed by the St. Louis Court of Appeals, which is the highest court of the State in which a decision in the suit could be had.

Mr. *W. Hallett Phillips* and Mr. *John W. Noble* for plaintiff in error.—It is denied by the defendant in error, the Savings Association, that the amount due Cobb, Dolhonde & Co. by

the Boatmen's Bank, was rightfully applied by that bank, or that the case was one of mutual credits. They claim that the fund in the hands of the Boatmen's Bank should have been paid over by that bank to them. If the presentment of the checks established a liability on the part of the Boatmen's Bank to pay over to the holder the amount due by that bank to Cobb, Dolhonde & Co., then the application of the credit and its allowance in the bankruptcy proceedings was erroneous; the money in point of law was due the holder of the checks and not Cobb, Dolhonde & Co. On the other hand, if no such liability was established by the presentment of the checks, then the Boatmen's Bank had a right to treat the amount due by it as due Cobb, Dolhonde & Co., and accordingly had the right to apply it toward the extinguishment of the amount due by that firm to the bank; in other words, they had the right to treat the case as one of mutual debts and credits within the meaning of the bankrupt act.

*Mr. Jeff. Chandler, Mr. John M. Glover, Mr. John F. Shepley* and *Mr. George H. Shields* for defendant in error.

Mr. CHIEF JUSTICE WAITE, after stating the facts in the foregoing language, delivered the opinion of the court.

We are unable to discover any federal question in the record. No title, right, privilege or immunity, under the Constitution or laws of the United States, was set up in the pleadings, and no claim of that kind was made at the trial. The whole controversy, at and before the trial, seems to have been as to the right of the holder of a banker's check to recover against a bank having funds of the drawer when presentation has been duly made and payment demanded, and as to the effect of the arrangement between the parties when it was agreed that the bank should pay the checks if the Bradley draft was collected.

In the Court of Appeals it was, among other things, assigned for error that " the judgment was against the right of the defendant to a judgment in his favor under the provisions of the act of Congress of the United States, establishing and provid-

ing for a uniform system of bankruptcy, in force at the time of the transaction between the parties, out of which the controversy arises," and, from the opinion of the court, Rev. Stat. § 5073, seems to have been relied on. That section provides:

"In all cases of mutual debts or mutual credits between the parties, the account between them shall be stated, and one debt set off against the other, and the balance only shall be allowed or paid."

No rights under this section were set up in the pleadings or claimed at the trial; and, besides, the right of the bank to apply whatever credit there may be in its accounts in favor of the bankrupt firm to the reduction of the amount due on the draft is not denied. The only dispute is as to the amount of the credit, and we are unable to see that the bankrupt law is involved in the determination of that question. The Court of Appeals decided that the presentation of the checks on the 5th of November operated as an equitable assignment at that date of an amount of the fund then standing to the credit of the firm equal to the amount of the checks, and made the Savings Association from that time, in equity, the creditor of the bank to that extent. Debts are provable against a bankrupt's estate as of the date of the commencement of the proceedings in bankruptcy. Rev. Stat. § 5067. As § 5073 relates to the amount which may be allowed upon such proof, it is clear that the mutual debts or mutual credits there referred to must be such as are in existence at the same date. In the present case the question was whether on the 5th of November, 1874, more than two months before the commencement of the proceedings in bankruptcy, a part of the balance standing to the credit of Cobb, Dolhonde & Co. on the books of the bank had been assigned to the plaintiff in this action. That did not depend on the bankrupt law, but on the legal effect of what was done at and before that time by the parties, and when, so far as appears from the record, no proceedings in bankruptcy were contemplated. The point for determination was, whether the presentation of a check, drawn on a banker by a customer having funds to his credit, transferred in equity to the holder

of the check so much of the debt due from the bank to the drawer, as was sufficient to pay the check. This is clearly not a federal question.

It follows that

*We have no jurisdiction of the case, and it is dismissed.*